| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| HELLO MEDIA, LLC.<br><br>Recurrente<br><br>Vs.<br><br>DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OFICINA DE GERENCIA DE PERMISOS; OFICINA DE GERENCIA DE PERMISOS<br><br>Recurridos | KLRA202500067 | *Revisión Administrativa* procedente de la División de Revisiones Administrativas (OGPe)<br><br>Sobre: Solicitud de Permiso de construcción consolidado para una instalación de una valla publicitaria<br><br>Querella núm.: 2023-491818-PCOC-304697 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece Hello Media, LLC. (en adelante, "Hello Media" o "parte recurrente") mediante el presente recurso de *Revisión Judicial* para que revoquemos una *Resolución de Revisión Administrativa* emitida y notificada el 30 de diciembre de 2024, por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (en adelante, "DRA-OGPe" o "parte recurrida"). Allí, la DRA-OGPe declaró *No Ha Lugar* la *Solicitud de Revisión Administrativa* presentada por la parte recurrente y confirmó la *Resolución sobre Permiso de Construcción* emitida el 19 de agosto de 2024 por la Oficina de Gerencia de Permiso (en adelante, "OGPe") en la que denegó el Permiso de Construcción Consolidado número 2023-491818-PCOC-304697 solicitado por Hello Media.

Número Identificador

SEN2025_____

Considerados los recursos y el derecho aplicable, **confirmamos** el dictamen recurrido. Veamos.

**-I-**

El **14 de mayo de 2024**, Hello Media, por conducto del ingeniero José A. García Marrero, presentó ante la OGPe una solicitud de permiso para construir una valla publicitaria de dos caras, que llevaría una pantalla digital en una y un anuncio fijo en la otra. La valla estaría localizada sobre un solar calificado en el Mapa de Calificación de Suelos del Municipio de Dorado como un distrito Agrícola General, en la Carretera PR-6693, a la altura del kilómetro 0.7, en el Barrio Higuillar del referido municipio.

El **29 de mayo de 2024**, la OGPe solicitó a Hello Media que sometiera los siguientes documentos: **(1)** la recomendación de la división de infraestructura aprobada de la Autoridad de Carreteras y Transportación (en adelante, "ACT") del Departamento de Transportación y Obras Públicas (en adelante, "DTOP"); **(2)** el endoso del Municipio de Dorado; y **(3)** las especificaciones de la pantalla eléctrica junto con el plano electrónico de construcción.[1]

En respuesta, el **18 de junio de 2024** Hello Media sometió las especificaciones de la pantalla y el plano electrónico requeridos.[2] Adujo que el 15 de mayo de 2024, solicitó la recomendación de la ACT y DTOP.[3] No obstante, aun las referidas entidades no habían respondido. Sobre esto, anejó el recibo del pago del trámite como evidencia.[4] Además, citó la sección 2.1.9.11 del Reglamento Núm. 9473, *infra*, y arguyó que las referidas agencias debían emitir sus recomendaciones dentro del término de treinta (30) días a partir de la fecha de la notificación de la solicitud y que, de no responder, la

---

[1] Anejo 1 del Apéndice del Recurso de Revisión Judicial, a la pág. 35.
[2] *Íd.,* a las págs. 204-203.
[3] *Íd.,* a la pág. 194
[4] *Íd.,* a la pág. 197.

OGPe debía entender que no tenían recomendaciones y proseguir con el trámite.

De igual forma, explicó que el 14 de junio de 2024 solicitó el endoso al Municipio de Dorado y no había obtenido respuesta aún. Sin embargo, expuso que el municipio no tenía jerarquía ni contaba con un convenio con la Junta de Planificación para evaluar permisos de anuncios. Además, que el proyecto se ubicaba en un predio privado frente a una carretera estatal, por lo que entendía que no era necesaria la recomendación del municipio.[5] Anejó las copias de los correos electrónicos enviados al municipio solicitando el endoso, como evidencia del trámite.[6]

Por otro lado, el **12 de febrero de 2024**, en una comunicación dirigida a la OGPe, el Área de Control de Contaminación por Ruidos y Lumínica del Departamento de Recursos Naturales y Ambientales (en adelante, "DRNA") reiteró su denegatoria de endosar el proyecto, emitida el 23 de junio de 2023, a instancias de Hello Media.[7] Razonó que las coordenadas de ubicación del proyecto se encuentran en un área catalogada por la Junta de Planificación como *Clase 1 – terrenos obscuros*, en donde está prohibida la operación de pizarras electrónicas, conforme a la Ley Núm. 218-2008, *infra*. Además, expresó que el área era utilizada por la Sociedad Astronómica del Caribe para realizar investigaciones astronómicas.

El **18 de abril de 2024**, Hello Media solicitó a la OGPe que no tomara en consideración la denegatoria del endoso por parte del DRNA.[8] Adujo que la negatoria era nula de su faz dado que la Junta de Planificación, en contravención con la Ley Núm. 218-2008, *infra,* no había delimitado el área *Clase 1 – terrenos obscuros* en mapas que acompañen el reglamento de la referida ley.

---

[5] Anejo 1 del Apéndice del Recurso de Revisión Judicial, a la pág. 195.
[6] *Íd.,* a las págs. 199-202.
[7] *Íd.,* a las págs. 151-158.
[8] *Íd.,* a las págs. 171-173.

Así las cosas, el **19 de agosto de 2024** la OGPe emitió una *Resolución sobre Permiso de Construcción* en la que denegó el permiso solicitado por entender que el proyecto no cumplía con las disposiciones de la Ley Núm. 218-2008, *infra*, la Ley Núm. 107-2020, mejor conocida como el *Código Municipal de Puerto Rico* y el Reglamento Núm. 9473, *infra*.[9] En específico, la OGPe determinó que la falta de endosos por parte del DRNA y el Municipio de Dorado, así como la altura que tendría la valla publicitaria, impedían que se otorgara el permiso de construcción.

Inconforme, el **9 de septiembre de 2024** Hello Media presentó una *Solicitud de Revisión Administrativa* ante la DRA-OGPe,[10] la cual fue acogida el **23 de septiembre de 2024**.[11] En su solicitud, la parte recurrente señaló que la OGPe erró al entender que: podía denegar el permiso de construcción por la falta de endoso del Municipio de Dorado, al utilizar el parámetro de altura aplicable a rótulos del Reglamento Núm. 9473, *infra* y no el aplicable a los anuncios. En específico, arguyó que la OGPe erró al denegar el permiso de construcción por la falta de endoso del DRNA toda vez que dicha agencia fundamentó su denegatoria en un documento distinto al que exige la Ley Núm. 218-2008, *infra*.

El **25 de octubre de 2024**, se celebró una Vista Administrativa a la que comparecieron Hello Media y la OGPe, a través de sus representantes legales: además, el ingeniero José A. Santiago Veray, asistió como testigo pericial de la parte recurrente. Celebrada ante el Oficial Examinador, este emitió un Informe de Vista en el que recomendó declarar Ha Lugar la Solicitud de Revisión Administrativa.[12] En síntesis, precisó que el DRNA denegó el endoso en contrariedad a la Ley Núm. 218-2008, *infra*, al utilizar la

---

[9] Anejo 2 del Apéndice del Recurso de Revisión Judicial, a las págs. 208-214.
[10] Anejo 3 del Apéndice del Recurso de Revisión Judicial, a las págs. 215-229.
[11] Anejo 4 del Apéndice del Recurso de Revisión Judicial, a las págs. 230-233.
[12] Anejo 8 del Apéndice del Recurso de Revisión Judicial, a las págs. 244-261.

plataforma *Google Earth* para determinar que las coordenadas del terreno donde ubicaría el proyecto pertenecen a un el área catalogada como *Clase 1 – Terrenos Obscuros*, y no utilizar, el Mapa de Clasificación de Áreas Exteriores y Especiales adoptado por la Junta de Planificación, como lo exige la referida ley. Además, encontró que Hello Media cumplió con los trámites de rigor para solicitar el endoso del Municipio de Dorado, por lo que la OGPe estaba impedida de denegar el permiso de construcción basado en la falta de la recomendación municipal.

El **9 de diciembre de 2024**, previo a que expirara el plazo de noventa (90) días para adjudicar la revisión administrativa, la DRA-OGPe emitió una *Orden de Prórroga* y extendió el plazo por treinta (30) días adicionales.[13]

Así las cosas, el **30 de diciembre de 2024**, la DRA-OGPe emitió una *Resolución de Revisión Administrativa.*[14] Allí, no acogió la recomendación emitida por el Oficial Examinador y sostuvo la determinación de la OGPe de denegar el permiso de construcción. En esencia, encontró que —de la comunicación emitida por el DRNA denegando el endoso— surge que las coordenadas de ubicación del proyecto fueron revisadas por la agencia en el Mapa de Clasificación de Áreas Exteriores y Especiales, el cual reflejó que el área sobre el cual se levantaría la valla publicitaria está clasificada como *Clase 1 – terrenos obscuros*. Asimismo, dispuso que, si bien el testigo pericial de la parte recurrente declaró que la Sociedad Astronómica del Caribe no hacían observaciones científicas en el Municipio de Dorado, no presentó documentación alguna que sostuviera dicha comunicación.

Por otro lado, la DRA-OGPe determinó que la OGPe erró al utilizar la falta de endoso del Municipio de Dorado como fundamento

---

[13] Anejo 9 del Apéndice del Recurso de Revisión Judicial, a las págs. 262-263.
[14] Anejo 10 del Apéndice del Recurso de Revisión Judicial, a las págs. 264-279.

para denegar el permiso de construcción. Del mismo modo, sobre la denegatoria del permiso por estar las dimensiones de la altura de la valla publicitaria en alegada contravención con la Sección 8.7.9.1 del Reglamento Núm. 9473, *infra*, la DRA-OGPe encontró que en la referida sección no se hace referencia a que se permiten anuncios en los distritos catalogados como Agrícola General (AG), sino rótulos cuyo diseño armonice con el carácter del área. Por consiguiente, declaró *No Ha Lugar* la *Solicitud de Revisión Administrativa.*

Inconforme, el **29 de enero de 2024** Hello Media acude ante nos a través del *Recurso de Revisión Judicial* y expone las comisiones de los siguientes cuatro (4) errores:

> **PRIMER ERROR.** *ERRÓ LA DRA AL CONFIRMAR LA RESOLUCIÓN DE LA OGPE DENEGANDO EL PERMISO DE CONSTRUCCIÓN BASADO EN LA FALTA DE ENDOSO DEL DRNA, QUE UTILIZÓ PARA ASÍ ACTUAR UN DOCUMENTO DISTINTO AL REQUERIDO POR LA LEY 218-2008 PARA LA CLASIFICACIÓN DE LAS ÁREAS EXTERIORES Y DETERMINACIONES SOBRE ILUMINACIÓN Y NO UN PLANO OFICIAL Y PÚBLICO.*
>
> **SEGUNDO ERROR.** *ERRÓ LA DRA AL CONFIRMAR LA RESOLUCIÓN DE LA OGPE DENEGANDO EL PERMISO DE CONSTRUCCIÓN BASADO EN LA FALTA DE COMENTARIOS DEL MUNICIPIO DE DORADO Y EN UNA DISPOSICIÓN INAPLICABLE SOBRE EL PARÁMETRO DE ALTURA CORRESPONDIENTE A SOLICITUDES DE RÓTULOS Y NO DE ANUNCIOS.*
>
> **TERCER ERROR.** *ERRÓ LA DRA AL CONFIRMAR LA RESOLUCIÓN DE LA OGPE DENEGANDO EL PERMISO DE CONSTRUCCIÓN, EMITIENDO SU RESOLUCIÓN DE REVISIÓN EN CONTRA DE LAS DETERMINACIONES, CONCLUSIONES Y RECOMENDACIÓN DEL INFORME RENDIDO POR EL OFICIAL EXAMINADOR, SIN HACER CONSTAR LA JUSTIFICACIÓN PARA ELLO.*
>
> **CUARTO ERROR.** *ERRÓ LA DRA AL APLICAR LA DOCTRINA DE DEFERENCIA JUDICIAL AL DECLARAR NO HA LUGAR LA SOLICITUD DE REVISIÓN ADMINISTRATIVA CONFIRMANDO LA RESOLUCIÓN DE LA OGPE, EN VISTA DE QUE LA REFERIDA DOCTRINA ES INAPLICABLE A REVISIONES Y DETERMINACIONES INTERAGENCIALES.*

Por otra parte, el **12 de marzo de 2025** la OGPe del Departamento de Desarrollo Económico de P.R., presentó su alegato

en oposición. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**-II-**

**-A-**

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos han de conceder gran deferencia a las decisiones de los organismos administrativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les ha delegado.[15] El Tribunal Supremo de Puerto Rico ha establecido que las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección.[16] Por esto, es necesario que quien desee impugnar dichas decisiones presente evidencia suficiente para derrotar la presunción de validez de la que gozan las mismas y no descanse en meras alegaciones.[17]

Conforme lo ha interpretado el Tribunal Supremo de P.R., la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción.[18] La revisión judicial de una determinación administrativa se circunscribe a determinar si: **(1)** el remedio concedido por la agencia fue apropiado; **(2)** las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y **(3)** las conclusiones de derecho fueron correctas.[19]

La Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, según enmendada (en adelante, "LPAUG" o "Ley Núm. 38-2017"),[20] dispone

---

[15] *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[16] *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).
[17] *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).
[18] *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010).
[19] *Pacheco v. Estancias, supra,* pág. 431.
[20] 3 LPRA sec. 9601, *et seq.*

en su Sección 4.5 que las determinaciones de hecho realizadas por una agencia administrativa serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia sustancial que surja del expediente administrativo al ser considerado en su totalidad.[21] Así, nuestra función apelativa se circunscribe a considerar si la determinación de la agencia es razonable, ya que lo que se persigue es evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[22]

Ahora bien, la citada Sección 4.5 de la LPAUG nos faculta a revisar las conclusiones de derecho, en todos sus aspectos.[23] No obstante, ello no implica que tenemos la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia.[24] Es decir, cuando un tribunal revisor llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. En otras palabras, también se ha dicho que, al revisar la determinación de la agencia, el criterio a aplicarse no debe ser si la determinación administrativa es la más razonable o la mejor, según el entender del tribunal revisor.[25]

En su lugar, el parámetro que gobierna estas situaciones es si la interpretación del ente administrativo de sus reglamentos y de las leyes que le corresponde aplicar es razonable.[26]

Por lo tanto, como tribunal revisor solo podemos sustituir el criterio de la agencia por el nuestro, cuando no pueda encontrar una base racional para explicar la determinación administrativa.[27]

---

[21] 3 LPRA sec. 9675.; Pacheco v. Estancias, *supra*, pág. 432.
[22] *Íd.*, 3 LPRA sec. 9675.
[23] *Íd.*
[24] *Otero v. Toyota*, 163 DPR 716, 729 (2005).
[25] *Íd.*
[26] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006).
[27] *Íd.*

**-B-**

La Ley Núm. 161-2009, según enmendada, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* (en adelante, "Ley Núm. 161-2009"),[28] fue creada a los fines de establecer el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico.[29] Mediante la aprobación de la Ley Núm. 161-2009, se creó la OGPe como entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y uso de terrenos.[30]

A esos fines, el Artículo 18.6 de Ley Núm. 161-2009,[31] dispone que la LPAUG aplicará a todos los procedimientos para la evaluación, el otorgamiento o la denegación de determinaciones finales y permisos, recomendaciones, certificaciones, licencias, certificados, entre otros, otorgados por la OGPe, salvo en las instancias que expresamente se disponga lo contrario o en aquellos casos donde esta Ley resulte inconsistente con la LPAUG.

En lo referente a la controversia aquí atendida, el Artículo 8.4 inciso (a) de la Ley Núm. 161-2009 regula la evaluación de las solicitudes de recomendaciones, consultas y permisos:

> Previo a la presentación de toda solicitud de consulta o permiso, deberán solicitarse y obtenerse las recomendaciones, según se establezca en el *Reglamento Conjunto de Permisos* de conformidad con lo dispuesto en esta ley. En dicho reglamento se fijará el término para la expedición de las recomendaciones, el cual no será mayor de **quince (15) días naturales para proyectos ministeriales**, ni de **treinta (30) días naturales para proyectos discrecionales**, excepto en los casos donde se propongan proyectos a ser ubicados en áreas ecológicamente sensitivas, en los cuales el término para que se emitan las recomendaciones relacionadas a los recursos naturales será de cuarenta y cinco (45) días naturales, permitiéndose una extensión a dicho término de quince (15) días naturales adicionales, según las condiciones que se establezcan en el *Reglamento Conjunto de Permisos*. La solicitud de recomendación que sea presentada ante cualquier agencia o

---

[28] 23 LPRA sec. 9011 *et seq.*
[29] *Spyder Media Inc. v. Mun. de San Juan,* 194 DPR 547, 552 (2016).
[30] *Horizon v. Jta Revisora, RA Holding,* 191 DPR 228, 236 (2014).
[31] Artículo 18.6 - *Aplicabilidad de la Ley de Procedimiento Administrativo Uniforme.* 23 LPRA sec. 9028e.

> municipio equivaldrá a cualquier notificación que por ley o reglamento se requiera a los mismos. <u>Si un municipio no emitiere sus recomendaciones dentro de los términos aquí establecidos, se entenderá que no tiene recomendaciones ni objeciones al proyecto propuesto.</u>
>
> En el *Reglamento Conjunto de Permisos* <u>se definirán las recomendaciones que serán requeridas para las distintas solicitudes de consultas, permisos o autorizaciones, estableciendo categorías basadas en los tipos de proyectos, suelos donde ubiquen y otras consideraciones relacionadas, de manera que se cuente con un expediente administrativo completo y claro.</u> Se definirá, además, cuáles recomendaciones podrán ser emitidas por las distintas entidades, agencias o profesionales, conforme a las facultades delegadas en esta ley.[32]

Nótese que el citado inciso (a) del Artículo 8.4 de la Ley Núm. 161-2009, establece unos términos fijos para la expedición de las recomendaciones, y a su vez, refiere el *Reglamento Conjunto de Permisos* —que más adelante discutiremos— para definir más recomendaciones a las distintas solicitudes.

En lo que respecta a la **División de Revisión Administrativa de la OGPe (DRA)**, al Artículo 11.1 de la Ley Núm. 161-2009, crea la DRA como organismo adscrito a la OGPe, la cual tiene la función de revisar las actuaciones y determinaciones de la Junta Adjudicativa, la OGPe, los Profesionales Autorizados y los Municipios Autónomos con Jerarquía de la I a la V.[33]

El Artículo 11.3 de la Ley Núm. 161-2009, establece las facultades, deberes y funciones de la DRA y el Juez Administrativo los siguientes:

> a. ejercer las funciones, deberes y responsabilidades impuestas en esta Ley y en cualquier otra ley que no sean incompatibles con las disposiciones de esta Ley;
> b. **celebrar vistas y adjudicar los asuntos presentados ante su consideración, de manera rápida y eficiente, salvaguardando los derechos procesales y sustantivos de las partes**;
> c. mantener un expediente administrativo claro;
> d. en el cumplimiento de su función revisora impuesta por esta Ley, expedir citaciones requiriendo la comparecencia de persona, testigo, toma de deposiciones o la presentación de toda clase de evidencia de conformidad con el ordenamiento jurídico vigente;

---

[32] Artículo 8.4. — Evaluación de las solicitudes de recomendaciones, consultas y permisos. 23 LPRA sec. 9018c. Énfasis nuestro.
[33] Artículo 11.1. — Creación y función de la División de Revisiones Administrativas. 23 LPRA sec. 9021m.

     **e.** tomar juramento por conducto de los oficiales examinadores;

     **f.** comparecer ante cualquier sala del Tribunal de Primera Instancia y solicitar que dicho Tribunal ordene el cumplimiento de cualquier citación expedida y que no sea cumplida.

     **g.** emitir cualquier orden, requerimiento o **resolución** que en derecho proceda en los casos ante su consideración;

     **h. delegar en los Oficiales Examinadores la capacidad de presidir vistas**;

     **i. cualquier otra que por esta Ley o Reglamento se le asignen**.[34]

El Artículo 15.1 de la Ley Núm. 161-2009 le ordena a la Junta de Planificación, que, con la colaboración de la OGPe, promulgue un *Reglamento Conjunto* para establecer y aplicar, entre otros asuntos, *"la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos"*.[35]

Cónsono con lo anterior, el 16 de junio de 2023, la Junta de Planificación adoptó el **Reglamento Núm. 9473**, titulado *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (en adelante, "Reglamento Conjunto").[36] Como cuestión de umbral, la Sección 2.2.1.3, *Criterios de Evaluación de Solicitudes de Carácter Ministerial* del Reglamento Conjunto, en su inciso (d) reconoce que los permisos ministeriales se otorgarán para los usos específicamente permitidos en cada distrito y siempre tienen que cumplir cabalmente con varios parámetros, a saber: **(1)** calificación; **(2)** usos; **(3)** altura; **(4)** tamaño del solar; **(5)** densidad; **(6)** área de ocupación; **(7)** área bruta de piso; **(8)** patios (delantero, laterales y posterior); **(9)** espacios de estacionamientos, y **(10)** área de carga y descarga.[37]

---

[34] Artículo 11.3. — *Facultades, deberes y funciones generales de la División de Revisiones Administrativas y el Juez Administrativo.* 23 LPRA sec. 9021o. Énfasis nuestro.

[35] Artículo 15.1 - *Reglamento Conjunto.* 23 LPRA sec. 9025.

[36] Junta de Planificación, *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios,* Núm. 9473. Aprobado el 16 de junio de 2023. Es de aplicación a este caso.

[37] Sección 2.2.1.3, inciso (d) del Reglamento Conjunto.

Conforme al inciso (c) de la Sección 2.2.1.3 del Reglamento Conjunto antes citado, los permisos de esta naturaleza se expedirán *"únicamente cuando la estructura o uso para lo que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento"*.[38]

A su vez, la Sección 2.1.9.11, incisos (a), (b) y (g) del Reglamento Conjunto establece el término que las entidades y agencias tienen para evaluar y resolver una solicitud de recomendación:

a. **Se solicitarán recomendaciones a los Municipios**, *la JP y a las Entidades Gubernamentales Concernidas, de entenderse necesario, según apliquen, como parte del proceso de evaluación de la solicitud.*

b. *Estos deberán remitir sus recomendaciones dentro del término de treinta (30) días a partir de la fecha de notificación de la solicitud de recomendaciones.* **De no emitir sus recomendaciones dentro de dicho término, se entenderá que no tienen recomendaciones y se procederá con el trámite correspondiente**.

*[...]*

No obstante a lo antes dispuesto, en el inciso (g) de la Sección 2.1.9.11 del Reglamento Conjunto exige que las entidades y agencias emitan sus recomendaciones **previo a su aprobación por la OGPe**:

g. ***Se prohíbe el uso de cualquier tipo de diseño, material o método de instalación del sistema lumínico que no haya sido evaluado y aprobado por la OGPe.***

1. ***Toda propuesta de proyecto deberá contar con las recomendaciones del DTOP y del DRNA, previo a su aprobación.***
2. ***Las características de iluminación deberán tomar en consideración lo dispuesto en el Reglamento para el Control y la Prevención de la Contaminación Lumínica del DRNA y en la Ley 218-2008, según enmendada, conocida como la Ley para el Control y la Prevención de la Contaminación Lumínica.***[39]

---

[38] Sección 2.2.1.3, inciso (c) del Reglamento Conjunto.
[39] *S*ección 2.1.9.11 incisos (a), (b), (g) del Reglamento Conjunto. Énfasis nuestro.

Asimismo, la Regla 8.7.9 del Reglamento Conjunto,[40] referente a **rótulos y anuncios** en distritos calificados, como lo es el distrito Agrícola General (A-G) de este caso, establece lo siguiente en su Sección 8.7.9.1, incisos (a) y (b) del referido Reglamento Conjunto:

> ***a.*** *Se permitirá la instalación de rótulos cuyo diseño, en su aspecto estético armonice con el carácter del área.*
> ***b.*** *Se permitirá la instalación de un (1) solo rótulo por edificio o local y un (1) rótulo sobre el terreno donde éste se permita.*

Teniendo en cuenta la restricción antes dicha, la Sección 8.7.9.2 del Reglamento Conjunto dispone los rótulos a permitirse en dicho distrito:

> ***a.*** *Se permitirán rótulos para identificar el área, local o actividad llevándose a cabo en el lugar, informar sobre precauciones y medidas relacionadas con la conservación del área o recurso y para identificar especies de flora y fauna, algún recurso natural particular y otros.*
>
> > ***1. Tamaño****:*
> > ***a)*** *El tamaño del rótulo sobre la fachada no será mayor del treinta y cinco por ciento (35%) del área de la fachada donde se instale según determinada por las disposiciones de la Regla 8.7.7 de este Capítulo.*
> > ***b)*** *El tamaño máximo del rótulo sobre el terreno será determinado de conformidad con lo dispuesto en la Regla 8.7.3 de este Capítulo.*
> >
> > ***2. Iluminación****: Los rótulos podrán tener iluminación no intermitente cuando **no conflijan con la conservación, preservación, o investigación del tipo o clase de recurso natural a protegerse**.*
> >
> > ***3. Ubicación y Localización****:*
> > ***a)*** *Los rótulos serán ubicados sobre el terreno o fijados a cualquiera de las fachadas del edificio.*
> > ***b)*** *El rótulo no se proyectará fuera de los límites de la propiedad.*
> > ***c)*** *La altura del rótulo sobre el terreno medido desde el nivel del terreno hasta su parte más alta, no excederá de treinta y cinco (35) pies.*
> > ***d)*** *Sólo se permitirá un (1) rótulo sobre el terreno excepto en solares de esquina donde podrá ubicarse un (1) rótulo dando frente a cada una de las vías públicas.*
>
> ***b.*** *Los rótulos y anuncios en el distrito RT-I y RT-A estarán condicionados a las recomendaciones de la CT.[41]*

---

[40] Regla 8.7.9 *Rótulos y Anuncios en Distritos – RT-1, RT-A, R-G, A-G, A-P, A-B, C-R, C-H, S-H, P-P, P-R Y R-E* del Reglamento Conjunto.
[41] *Sección 8.7.9.2 – Rótulos a Permitirse* del Reglamento Conjunto.

Nótese, que los rótulos y anuncios en un distrito Agrícola General (A-G), —como en este caso— se permitirán específicamente para identificar el área, local o actividad autorizada en el lugar, informar sobre precauciones y medidas relacionadas con la conservación del área o recurso y para identificar especies de flora y fauna, algún recurso natural particular y otros.

Por último, la Sección 11.6.1.11 del Reglamento Conjunto regula todo lo concerniente a la designación y facultades del Oficial Examinador,[42] entre ellas, emitir el Informe al Auditor de Permisos y su recomendación para la resolución del caso.[43]  No obstante, la JP no está obligada a acoger la recomendación del Oficial Examinador.[44]

**-C-**

Por otra parte, la Ley Núm. 218-2008, conocida como la _Ley para el Control y la Prevención de la Contaminación Lumínica_, según enmendada,[45] (en adelante, "Ley Núm. 218-2008") fue promulgada para contrarrestar y prevenir el daño ocasionado por la iluminación artificial excesiva a nuestro cielo nocturno.[46]

El referido estatuto hace indispensable la aprobación de la OGPe a todas las obras propuestas que involucren sistemas lumínicos exteriores e impone al proponente una serie de requisitos. En lo pertinente, el Artículo 7 inciso (a) de la Ley Núm. 218-2008 establece que:

> (a) _Se prohíbe el uso de cualquier tipo de diseño, material o método de instalación del sistema lumínico que_ **_no haya sido evaluado y aprobado por la OGPe_**. _Todo proponente_ _deberá_ _presentar ante la OGPe los endosos del_

---

[42] Sección 11.6.1.11 – _Designación y Facultades del Oficial Examinador_ del Reglamento Conjunto.

[43] Sección 11.6.1.11 inciso (b)(8) – _Facultades del Oficial Examinador_ del Reglamento Conjunto.

[44] Sección 11.6.1.12 inciso (c) – _Resolución_ del Reglamento Conjunto.

[45] Ley Núm. 218-2008. 12 LPRA sec. 8031 _et seq._

[46] Véase, el Artículo 4 – _Creación del Programa._ 12 LPRA sec. 8032. Además, cabe destacar que esta Ley se adopta al amparo de las disposiciones del Artículo 9, Título II de la Ley Núm. 416- 2004, según enmendada, conocida como _Ley sobre Política Pública Ambiental._ Véase, el Artículo 1 – _Base Legal._ 12 LPRA sec. 8031 nota.

*Departamento de Transportación y Obras Públicas y del Departamento de Recursos Naturales y Ambientales, <u>previo</u> a su aprobación. Estas agencias tendrán un término de quince (15) días, contados a partir de radicada una solicitud, para evaluar la misma y emitir o denegar un endoso. <u>Transcurrido dicho término sin que las agencias evalúen y emitan una decisión,</u> **<u>la OGPe continuará el proceso de aprobación establecido en esta Ley sin la intervención de estas agencias</u>**.*[47]

En el Artículo 8 de la Ley Núm. 218-2008 se clasifican distintas zonas en áreas exteriores y especiales, de acuerdo con sus características de iluminación.[48] En específico, el inciso (a) (1) del referido Artículo 8 clasifica como área *Clase 1 – terrenos obscuros* los siguientes lugares:

> ***Áreas dedicadas a parques, áreas de conservación, Reservas Naturales, Bosques Estatales, <u>áreas dedicadas a estudios y observaciones astronómicas y sus alrededores, con poca o ninguna iluminación exterior</u>**. <u>La Junta de Planificación, con la colaboración del Departamento de Recursos Naturales y Ambientales, delimitará estas áreas en mapas que acompañarán al Reglamento de esta Ley</u>.* [49]

Nótese también, que sobre la clasificación *Clase 1 de terrenos oscuros*, el inciso (a) (1) del Artículo 8 establece que la Junta de Planificación, en colaboración con el DRNA, <u>debe</u> delimitarlas en mapas que acompañen el reglamento de la ley.[50]

De otra parte, el Artículo 6, inciso (e) de la Ley Núm. 218-2008, establece los parámetros de iluminación para anuncios publicitarios con sistemas análogos y tradicionales; incluyendo también los sistemas digitales. En específico, *<u>no se permitirá la operación de anuncios con sistemas de iluminación en horas nocturnas en las áreas exteriores de la Clase 1, ni en las Clases Especiales</u>*.[51] En palabras sencilla, en horas de la noche no se

---

[47] Artículo 7 - *Aprobación por la OGPe*. Ley Núm. 218-2008. 12 LPRA sec. 8035. Énfasis nuestro.

[48] Artículo 8 - *Clasificación de Áreas Exteriores y Especiales*. Ley Núm. 218-2008. 12 LPRA sec. 8036.

[49] *Íd.,* inciso (a) (1). Ley Núm. 218-2008. 12 LPRA sec. 8036. Énfasis nuestro.

[50] *Íd.*

[51] Artículo 6 - *Disposiciones Generales, inciso (e) (1).* Ley Núm. 218-2008. 12 LPRA sec. 8034. Énfasis nuestro.

permite el funcionamiento de anuncios iluminados en las áreas exteriores catalogadas Clase 1, ni en las Clases Especiales.

Cabe destacar que, el Artículo 3, incisos (a) y (nn) de la Ley Núm. 218-2008, definen los términos **anuncio y rótulo**, bajo el mismo significado de **pizarras electrónicas**.[52]

Nótese, que la Ley Núm. 218-2008 hace referencia a que su definición de **anuncio y rótulo** proviene de la definición provista en el Artículo 4 inciso (a) y (q) de la *Ley Uniforme de Rótulos y Anuncios de Puerto Rico de 1999*, (en adelante, "Ley Núm. 355-1999"),[53] en la que al igual que la Ley Núm. 218-2008, define **anuncio y rótulo bajo la misma categoría de pizarras electrónicas**.[54]

---

[52] Artículo 3 – *Definiciones, (a) y (nn)*. Ley Núm. 218-2008. 12 LPRA sec. 8031.

En cuanto al término de **Anuncio**, el **inciso (a)** establece que [s]ignifica, según lo define la Ley Núm. 355-1999, según enmendada, **todo letrero**, **pizarra electrónica**, escritura, impreso, pintura, emblema, dibujo, lámina, o cualquier otro tipo de comunicación gráfica, ya sea en estructuras sobre el terreno, o adosados a la fachada de edificios, cuyo propósito sea llamar la atención para hacer una propaganda comercial o no comercial, o llamar la atención hacia una campaña, actividad, ideas o mensajes gubernamentales, políticos, religiosos, caritativos, artísticos, deportivos o de otra índole que se ofrece, vende, o lleve a cabo con el propósito de que sea visto desde una vía pública. Énfasis nuestro.

En cuanto al término **Rótulo**, el **inciso (nn)** establece que [s]ignifica **todo letrero**, **pizarra electrónica**, escritura, impresos, pintura, emblema, dibujo, lámina, o cualquier tipo de comunicación gráfica cuyo propósito sea llamar la atención hacia una actividad comercial, negocio, institución, servicio, recreación o profesión que se ofrece, vende o lleva a cabo en el solar o predio donde éste ubica colocado con el propósito de ser visto desde una vía pública; se excluye de su cobertura aquellas comunicaciones gráficas comúnmente utilizadas en el punto de venta, como lo son las "sintras", carteles, "racks" y otros similares. En los casos en que la instalación de un rótulo conlleve la erección de un armazón, en cualquier material, de aditamentos eléctricos y de otro tipo, y otros accesorios, se entenderá que éstos forman parte integrante del mismo y para todos los efectos legales se considerarán como una unidad. Énfasis nuestro.

[53] Ley Núm. 355-1999, según enmendada y conocida como la *Ley Uniforme de Rótulos y Anuncios de Puerto Rico de 1999*. 9 LPRA sec. 51, *et seq.*

[54] Artículo 4 - *Definiciones, incisos (a) y (q)*. Para los propósitos de esta Ley los siguientes términos tendrán el significado que se dispone a continuación salvo que del propio texto de la misma se desprenda lo contrario:

a) **Anuncio** — significará **todo letrero**, **pizarra electrónica**, escritura, impreso, pintura, emblema, dibujo, lámina, o cualquier otro tipo de comunicación gráfica cuyo propósito sea llamar la atención para hacer una propaganda comercial o no comercial, o llamar la atención hacia una campaña, actividad, ideas o mensajes gubernamentales, políticos, religiosos, caritativos, artísticos, deportivos o de otra índole que se ofrece, vende, o lleve a cabo con el propósito de que sea visto desde una vía pública. En los casos en que la instalación de un anuncio conlleve la erección de un armazón, en cualquier material, de aditamentos eléctricos y de otro tipo y otros accesorios, se entenderá que éstos forman parte integrante del mismo y para todos los efectos legales se considerarán como una unidad.

q) **Rótulo** — significará **todo letrero**, **pizarra electrónica**, escritura, impresos, pintura, emblema, dibujo, lámina, o cualquier tipo de comunicación gráfica cuyo propósito sea llamar la atención hacia una actividad comercial, negocio, institución, servicio, recreación o profesión que se ofrece, vende

Ahora bien, el 9 de agosto de 2016 la Junta de Calidad Ambiental aprobó el Reglamento Núm. 8786, titulado *Reglamento para el Control y la Prevención de la Contaminación Lumínica* (en adelante, "Reglamento Núm. 8786-JCA"). Cabe puntualizar que los objetivos del Reglamento Núm. 8786-JCA son, entre otros, implantar la política pública ambiental y las disposiciones generales respecto al control y la prevención de la contaminación lumínica.[55]

A través de la Regla 13 del Reglamento Núm. 8786-JCA, se establece la iluminación exterior, conforme a las clases de áreas. En lo que respecta a la *Clase 1 de terrenos nocturnos*, se dispone lo siguiente:

> *Las Clases de áreas exteriores y especiales, serán delimitadas en el* *Mapa de Clasificación de Áreas Exteriores y Especiales*, **cuya versión final será adoptada por la Junta de Planificación**. *Hasta tanto esto no ocurra, las mismas estarán demarcadas conforme a lo que disponga la Ley Núm. 218. Estas Clases se enumeran a continuación de acuerdo con sus características de iluminación:*
>
> A. **Clase 1 – Terrenos Oscuros**- Áreas dedicadas a parques, áreas de conservación, Reservas Naturales, Bosques Estatales, áreas dedicadas a estudios y observaciones astronómicas y sus alrededores, con poco o ninguna iluminación exterior.
>
> En estas áreas, además de los requisitos de medidas de control para la iluminación exterior expresadas en este reglamento, el valor de iluminación en el plano vertical, tomado fuera de la colindancia de la propiedad iluminada, no deberá ser mayor de 0.10fc posterior a la puesta del sol y hasta las 11:00 p.m.; y no debe exceder de 0.05fc, posterior a las 11: p.m. y hasta el amanecer.
>
> Toda luminaria en esta Clase colindante con otra Clase de menor requisito de iluminación deberá

---

o lleva a cabo en el solar o predio donde éste ubica colocado con el propósito que sea visto desde una vía pública, y se excluye de su cobertura aquellas comunicaciones gráficas comúnmente utilizadas en el punto de venta, como lo son las "sintras", carteles, "racks" y otros similares. En los casos en que la instalación de un rótulo conlleve la erección de un armazón, en cualquier material, de aditamentos eléctricos y de otro tipo y otros accesorios, se entenderá que éstos forman parte integrante del mismo y para todos los efectos legales se considerarán como una unidad. Ley Núm. 355-1999. 9 LPRA sec. 51. Énfasis nuestro.

[55] Regla 3 – *Objetivos* del Reglamento Núm. 8786-JCA.

cumplir con el nivel de iluminación más bajo de los que apliquen a cada clase.[56]

A esos efectos, la Regla 17 del Reglamento Núm. 8786-JCA, establece los requisitos de instalación y operación para sistemas de iluminación de anuncios, rótulos y pizarras electrónicas. En lo pertinente a nuestro caso, el inciso (A)(1) de la referida Regla 17, dispone lo siguiente en cuanto a los anuncios y publicidad lumínicos en el exterior:

> Los sistemas lumínicos dedicados a anuncios y publicidad en el exterior **deberán** cumplir con los siguientes requisitos para controlar la contaminación lumínica, el deslumbre ("glare") y/o la invasión lumínica ("ligth trespassing"):
> **A.** Los de iluminación para anuncios publicitarios instalados con sistemas análogos y tradicionales, y con sistemas digitales (pizarras electrónicas) son los siguientes:
> **(1)** No se permitirá la operación de anuncios con sistemas de iluminación <u>en horas nocturnas en las áreas exteriores **o inmediatamente colindantes de la Clase 1, ni en las Clases Especiales**</u>.[57]

Finalmente, el 17 de agosto de 2016 la Junta de Planificación emitió la **Resolución JP-MCAEE-2016**, en la que adoptó el <u>*Mapa de Clasificación de Áreas Exteriores y Especiales – Reglamento para el Control y la Prevención de la Contaminación Lumínica*</u>, del cual, la Junta de Planificación, junto con el DRNA, delimitó las clases de áreas exteriores y especiales.

Por su importancia, a continuación se transcribe la **Resolución JP-MCAEE-2016**, íntegramente:

> 17 de agosto de 2016
>
> RESOLUCIÓN: **JP-MCAEE-2016**
>
> PARA ADOPTAR EL ***MAPA DE CLASIFICACIÓN DE ÁREAS EXTERIORES Y ESPECIALES -REGLAMENTO PARA EL CONTROL Y LA PREVEIVCION DE LA CONTAMINACIÓN LUMÍNICA***
>
> La Junta de Planificación, cumpliendo con las disposiciones del Artículo 27 de la Ley Núm. 75 de 24 de junio de *1975,* conocida corno "Ley Orgánica de la Junta de Planificación", la Ley Núm. 218 de 9 de agosto de 2008, según enmendada, conocida como "Ley para el Control y la

---

[56] Regla 13 – *Clase de Iluminación Exterior* del Reglamento Núm. 8786-JCA. Énfasis nuestro.
[57] Énfasis nuestro.

Prevención de la Contaminación Lumínica", y la Ley Núm. 170 del 12 de agosto de 1988, conocida corno "Ley de Procedimiento Administrativo Uniforme", según enmendadas, con la colaboración del Departamento de Recursos Naturales y Ambientales preparó el *Mapa de Clasificación de Áreas Exteriores y Especiales - Reglamento Para el Control y la Prevención de la Contaminación Lumínica.*

La Ley Núm. 218-2008 creó el Programa de Control y Prevención de Contaminación Lumínica, adscrito a la Junta de Calidad Ambiental de Puerto Rico cuyo propósito es prevenir y controlar la contaminación lumínica de los cielos nocturnos. Según requerido por esta Ley, la Junta de Calidad Ambiental aprobará el *Reglamento para el Control y la Prevención de la Contaminación Lumínica* para incorporar elementos relacionados al control y eliminación de la intrusión de iluminación artificial en propiedades residenciales comerciales o industriales, así como la intrusión de iluminación artificial en áreas naturales. La Junta de Planificación, con la colaboración del Departamento de Recursos Naturales y Ambientales, delimitará en un mapa que acompañará al Reglamento antes citado las clases de áreas exteriores y especiales de acuerdo con sus características de iluminación, según definidas en el Articulo 8.– Clasificación de Áreas Exteriores y Especiales de esta Ley.

La Junta de Planificación, con la colaboración del Departamento de Recursos Naturales y Ambientales, *delimitó en el Mapa de Clasificación de Áreas Exteriores y Especiales - Reglamento Para el Control y la Prevención de la Contaminación Lumínica* las clases de áreas exteriores y especiales antes mencionadas, estableciendo una relación entre algunas de estas áreas y las categorías de clasificación del suelo *contenidas en el Memorial del Plan de Uso de Terrenos de Puerto* Rico y delimitadas en el *Mapa de Clasificación del Territorio del Plan de Uso de Terrenos de Puerto Rico.*

De conformidad con lo anteriormente expuesto y en virtud de las leyes citadas la Junta de Planificación de Puerto Rico en su reunión de 17 de agosto de 2016, **ADOPTAR** el *Mapa de Clasificación de Áreas Exteriores y Especiales - Reglamento Para el Control y la Prevención de la Contaminación Lumínica.*

*Luis García Pelatti*
*Presidente*

*Pedro M. Cardona Roig*                          *Sylvia Rivera Díaz*
*Vicepresidente Presidente*                      *Miembro Asociado*

*Excusado*                                       *Excusado*
*Juan C. Santiago Colón*                         *Tomás Torres Placa*
*Miembro Asociado*                               *Miembro Alterno*

**Certifico**: Que la anterior es copia fiel y exacta de la Resolución adoptada por la Junta de Planificación de Puerto Rico en su reunión celebrada el 17 de agosto de 2016 y para que así conste, firmo la presente.

En San Juan, Puerto Rico hoy 19 agosto 2016.

*Myrna Martínez Hernández*
Secretaria Interina

**-III-**

A la luz de la normativa expuesta, procedemos a evaluar los cuatro (4) errores señalados por la parte recurrente. Veamos.

**En el primer error**, en esencia, Hello Media señala que la DRA-OGPe incidió al sostener la determinación de la OGPe de denegar el permiso de construcción por la falta de endoso del DRNA. Aduce que la DRNA incumplió con la Ley Núm. 218-2008,[58] al no utilizar el mapa oficial para determinar que el área donde se ubicaría la valla publicitaria es una de *Clase 1 – terrenos obscuros*. No tiene razón.

Surge de la Resolución recurrida que —la comunicación del DRNA en la que denegó el endoso basado en las coordenadas de ubicación del proyecto— fueron revisadas en el *Mapa de Clasificación de Áreas Exteriores y Especiales - Reglamento Para el Control y la Prevención de la Contaminación Lumínica*, el cual fue adoptado por la Junta de Planificación mediante la citada Resolución **JP-MCAEE-2016** en su reunión del 17 de agosto de 2016. Nótese, que el citado Artículo 6, inciso (e) de la Ley Núm. 218-2008, establece que *no se permitirá la operación de anuncios con sistemas de iluminación en horas nocturnas en las áreas exteriores de la Clase 1, ni en las Clases Especiales*.[59] De igual modo, el inciso (A)(1) de la referida Regla 17 del Reglamento Núm. 8786-JCA, reitera que *no se permitirá la operación de anuncios con sistemas de iluminación en horas nocturnas en las áreas exteriores o inmediatamente colindantes de la Clase 1, ni en las Clases Especiales*.

En consecuencia, el DRNA determinó que el proyecto propuesto por Hello Media estaba ubicado en un área clasificada *Clase 1— terrenos oscuros*, por lo que la OGPe, tomando los

---

[58] Ley para el Control y la Prevención de la Contaminación Lumínica.
[59] 12 LPRA sec. 8034. Énfasis nuestro.

comentarios del DRNA, denegó correctamente la solicitud de permiso. Tampoco, surge del expediente que la parte recurrente haya presentado otra prueba que indicara que el proyecto propuesto no estaba ubicado en un área *Clase 1 — terrenos oscuros.* Por lo tanto, el primer error no fue cometido.

**En el segundo error**, Hello Media señala que la DRA-OGPe se equivocó al confirmar denegatoria del permiso de construcción por la falta del endoso del Municipio de Dorado y al disponer que los parámetros de altura de la valla publicitaria no cumplían con las disposiciones reglamentarias. No tiene razón.

De entrada, en la Resolución recurrida la DRA-OGPe reconoce que la OGPe se equivocó al denegar el permiso de construcción por la falta del endoso del municipio.[60] En específico, la DRA-OGPe resolvió: *"A tenor con lo antes expresado, concluimos que se cometió el segundo error, con relación a los comentarios del Municipio de Dorado."*[61]

Bajo el segundo error, Hello Media arguye que la DRA-OGPe incidió cuando señaló que los parámetros de altura de la valla publicitaria propuesta no cumplían con las disposiciones reglamentarias. Específicamente, adujo que su obra es un anuncio y no un rótulo. Tampoco tiene razón.

Independientemente a los parámetros de altura o si se trata de un anuncio y no de un rótulo, esta obra no podía ser construida en el terreno propuesto. Veamos.

Conforme al *Mapa de Clasificación de Áreas Exteriores y Especiales - Reglamento Para el Control y la Prevención de la Contaminación Lumínica,* adoptado por la Junta de Planificación en la citada Resolución JP-MCAEE-2016, el predio de terreno en donde Hello Media propone la construcción del proyecto, está clasificado

---

[60] Véase, la Resolución recurrida que obra en el Apéndice, a la pág. 277.
[61] *Íd.*

*Clase 1 de terrenos oscuros* por ser un área utilizada por la Sociedad Astronómica del Caribe para realizar investigaciones astronómicas. También, la construcción propuesta está ubicada en un distrito de valor Agrícola General (A-G).

En lo que respecta a la categoría *Clase 1 de terrenos oscuros*, indicamos que el Artículo 6, inciso (e) de la Ley Núm. 218-2008, dispone que: *no se permitirá la operación de anuncios con sistemas de iluminación en horas nocturnas en las áreas exteriores de la Clase 1, ni en las Clases Especiales.*[62] Igualmente, el inciso (A)(1) de la Regla 17 del Reglamento Núm. 8786-JCA, reitera que: *no se permitirá la operación de anuncios con sistemas de iluminación en horas nocturnas en las áreas exteriores o inmediatamente colindantes de la Clase 1, ni en las Clases Especiales.*

A lo antes dicho, hay que añadir la Sección 8.7.9.2 inciso (a) del Reglamento Conjunto que —para este caso— establece que en el distrito calificado como Agrícola General (A-G): *[s]e permitirán rótulos para identificar el área, local o actividad llevándose a cabo en el lugar, informar sobre precauciones y medidas relacionadas con la conservación del área o recurso y para identificar especies de flora y fauna, algún recurso natural particular y otros.*[63] Es decir, bajo la clasificación de distrito A-G solo se permitirá el rótulo cuando cumpla estrictamente con el contenido antes expresado.

Ahora bien, cabe hacer un paréntesis para indicar que el Artículo 3 incisos (a) y (nn) de la Ley Núm. 218-2008, define los términos **anuncio y rótulo** bajo el mismo significado de **pizarras electrónicas**.[64] De ese modo, los términos de **anuncio y rótulo** de la Ley Núm. 218-2008, provienen a su vez, del Artículo 4 incisos (a) y (q) de la Ley Núm. 355-1999, que de igual forma, define **anuncio**

---

[62] 12 LPRA sec. 8034. Énfasis nuestro.
[63] *Sección 8.7.9.2 – Rótulos a Permitirse* del Reglamento Conjunto.
[64] Artículo 3 – *Definiciones, (a) y (nn).* Ley Núm. 218-2008. 12 LPRA sec. 8031.

**y rótulo** bajo la misma categoría de **pizarras electrónicas**.[65] Por lo que bajo las leyes antes citadas, el término de anuncio o rótulo significarán pizarra electrónica.

A todas luces, la valla publicitaria o pizarra electrónica propuesta por Media Hello está dirigida a operar en horas de la noche —en contravención a la clasificación de área *Clase 1 de terrenos oscuros*—. Tampoco tiene el propósito de informar sobre precauciones y medidas relacionadas con la conservación del área o identificar especies de flora y fauna o algún recurso natural particular, conforme a su clasificación de *Distrito A-G.* En fin, no surge del expediente que la construcción de la valla publicitaria o pizarra electrónica propuesta, esté en armonía con la clasificación de *Clase 1 de terrenos oscuros* y de *Distrito A-G.* Por lo tanto, el segundo error no fue cometido.

**En el tercer error**, Hello Media señala que la DRA-OGPe incidió al descartar la recomendación del Oficial Examinador y que tal acción infringió su debido proceso de ley al no informarle adecuadamente los fundamentos para así hacerlo. No tiene razón.

A tono con el citado Artículo 11.3 inciso (h) de la Ley Núm. 161-2009,[66] la DRA-OGPe tiene la facultad de delegar al Oficial Examinador la capacidad de presidir vistas administrativas. No obstante, la DRA-OGPe no está obligada a acoger las recomendaciones que hace el Oficial Examinador en su Informe,[67] de conformidad a la Sección 11.6.11(c) de Reglamento Conjunto. Lo es importante es que la adjudicación sea conforme a derecho.[68] Por ello, un análisis de la Resolución recurrida refleja que la DRA-OGPe evaluó la prueba presentada en la vista administrativa, así como el

---

[65] Artículo 4 - *Definiciones, incisos (a) y (q).* Ley Núm. 355-1999. 9 LPRA sec. 51.
[66] 23 LPRA sec. 9021o.
[67] Nótese, que el Artículo 15.1 de la Ley Núm. 161-2009 (23 LPRA sec. 9025), ordena a la Junta de Planificación, con la colaboración de la OGPe, a que promulgue el Reglamento Conjunto, aquí citado.
[68] Sección 11.6.11(d) de Reglamento Conjunto.

expediente administrativo para llegar a su determinación. Por lo tanto, el tercer error no fue cometido.

**Cuarto y último error**, Hello Media señala que la doctrina de deferencia no es aplicable a las revisiones administrativas internas. No tiene razón. A tono con el citado Artículo 11.1 de la Ley Núm. 161-2009,[69] la DRA-OGPe es un ente administrativo facultado a revisar las actuaciones y determinaciones de la Junta Adjudicativa, la OGPe, los Profesionales Autorizaos y los Municipios Autónomos con jerarquía de la I a la IV. Nótese, que lo expresado por la DRA-OGPe en la Resolución recurrida es que la prueba que obra en el expediente y presentada en la vista administrativa por Hello Media no logró rebatir la presunción de corrección que goza la determinación de la OGPe.[70] Es decir, el presente caso es uno que versa sobre controversias de derecho y tanto la DRA-OGPe como este Tribunal, nos encontramos en igual posición para revisar las mismas. Por consiguiente, entendemos que el cuarto error no fue cometido.

En fin, al no encontrar que la Resolución recurrida de la DRA-OGPe haya sido arbitraria, ilegal o irrazonable, procedemos a confirmarla.

### -IV-

Por los fundamentos antes expuestos, **confirmamos** la Resolución recurrida.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[69] 23 LPRA sec. 9021m.
[70] Véase, la Resolución recurrida que obra en el Apéndice, a la pág. 278.